Tubneb, J.
 

 Appellants’ claims may be summarized as follows:
 

 (a) Their successions have been subjected to double taxation and (b) their successions came from the father direct and not through the son.
 

 It is contended by appellants that the Probate Court, by order made in the father’s estate, levied the full amount of inheritance taxes possible and that, therefore, no further inheritance taxes may be levied. They rely for this upon their interpretation of Section 5343, General Code.
 

 Section 5343, General Code, is only a part of an act creating an Ohio inheritance tax law, the various sections of which are
 
 in pari materia.
 

 The record shows that only a
 
 temporary
 
 determination of the taxes due upon the succession from the father’s estate was made. Such temporary order was made in pursuance of Section 5343, General Code, and contemplates the continuing jurisdiction of the Probate Court until the making of the final assessment and determination of the tax in accordance with the ultimate succession.
 

 
 *450
 
 While Section 5343, General Code, requires the successions to be taxed at the highest rate at which the happening of any contingencies or conditions would be possible, this requirement must be interpreted in the light of several other sections of the act, among them Section 5342, General Code, which provides, in part:
 

 “In estimating the value of any estate or interest in property, to the beneficial enjoyment or possession whereof there are persons or corporations
 
 presently
 
 entitled,
 
 no allowance
 
 shall be made on account of any contingent encumbrance thereon, nor
 
 on account of any contingency upon the happening of which the estate, or some part thereof, or interest therein, may be abridged, defeated or diminished
 
 * * (Italics ours.)
 

 Even in the absence of the foregoing provision of Section 5342, General Code, and assuming that the trust settlement or indenture did provide for remainders, Section 5342-1,.General Code, providing that “the present value of the remainder interest in any estate shall equal the difference between the value of the entire estate and the particular estate created therein” would preclude any valuation of any remainder for the reason that under the particular estate (if any) it was probable that the entire interest would pass ultimately to the son freed from any conditions or contingencies, and it was so taxed temporarily.
 

 Section 5336, General Code, provides in part:
 

 ‘ ‘ Taxes levied under this subdivision of this chapter shall be due and payable at the time of the succession,
 
 except as herein otherwise provided,
 
 but in no case prior to the death of the decedent. Taxes upon the succession to any estate or property, or interest therein limited, dependent or determinable upon the happening of any contingency or future event,
 
 and not vested at the death of the decedent, by reason of which the actual market value thereof cannot be ascertained at the time of such death,
 
 as provided in this subdivision of this chapter,
 
 shall accrue and become due and pay
 
 
 *451
 

 able when the persons or corporations then beneficially entitled thereto shall come into actual possession or enjoyment thereof.”
 
 (Italics ours.)
 

 In addition to the foregoing, the provisions of Section 5344, General Code, are applicable here and are as follows:
 

 “Estates in expectancy which are contingent or defeasible, and in which proceedings for the determination of the taxes have not been taken,
 
 or have been held in abeyance,
 
 shall be appraised at their full undiminished value,
 
 when the persons entitled thereto shall come into the beneficial enjoyment or possession thereof,
 
 without diminution for or on account of any valuation theretofore made of the particular estates for the purpose of this subdivision of this chapter, upon which such estates in expectancy may have been limited. An estate for life or for years which can be divested by the act or omission of the legatee, or dev-' isee, shall be appraised and taxed as if there were no possibility of any such divesting.” (Italics ours.)
 

 It was impossible for the Probate Court to have determined by a final order the amount or amounts which might be due ultimately on the successions from the father’s estate. In the first place, the son possessed only an inchoate power of appointment which would not become perfect or exercisable until he reached the age of 21 years. If the son survived until the age of 21, he had the right to appoint the entire estate up to the age of 30. From that time on until he reached 35, he might dispose of the one-half of the estate distributed to him at 30 without restriction and appoint the remaining one-half as he saw fit. After the son reached the age of 35, the entire estate was to be distributed to him unconditionally.
 

 In default of the exercise of his power of appointment between the ages of 21 and 35, the estate was to be distributed upon the son’s death to his issue and it was only in the event of the son’s death without issue
 
 *452
 
 before reaching the age of 21 or in the event of the son’s death without issue after reaching 21 and before reaching 30 without exercising the power of appointment that the son’s next of kin could succeed. Under the same circumstances the next of kin might succeed to the undistributed one-half prior to the son attaining the age of 35. Who these next of kin were and the degrees of relationship they would sustain toward the son were necessarily unknown at the time of the temporary determination of the inheritance tax due on account of the succession to the trust established by the father. Indeed, the trustee found it necessary to bring an action for declaratory judgment in the Court of Common Pleas of Cuyahoga county to determine the son’s next of kin after his death.
 

 There is nothing in the record to indicate that either the appellants or the appellee attempted to have final determination of the inheritance taxes made in the father’s estate in accordance with Section 5343, General Code, unless we are to consider the present proceedings before the same Probate Court and respecting the same assets as a substantial compliance with the law.
 

 We may dispose of the claim that double taxation has resulted by pointing out that even if the judgments of the lower court were affirmed, there would be no double taxation for the reason that the successions of appellants herein have not been taxed in any amount or at any rate. It remains to be determined whether appellants ’ successions are from the estate of the father or that of the son.
 

 These cases have been unduly complicated by the treatment of the provision for the power of appointment in the son as contained in the settlement of trust made by the father.
 

 Paragraph 4 of Section 5332, General Code, provides in substance that where a person possessing the power of appointment omits or fails to exercise it
 
 within the
 
 
 *453
 

 time provided therefor
 
 a succession through the donee shall be deemed to have taken place.
 

 Assuming that the son, a minor, was in
 
 possession
 
 of the power, it was an inchoate power which could not be exercised until he reached the age .of 21, when he became competent to execute a will. The trust settlement made a clear provision for the exercise of this power by the son between the ages of 21 and 30 years as to all of the corpus, and between the ages of 30 and 35 years as to the one-half of the corpus remaining in the hands of the trustee. As the son died at the age of 15, it cannot be said that he failed to exercise the power “within the time provided therefor.”
 

 Appellants’ claims of unconstitutionality were directed principally to paragraph 4 of Section 5332, General Oode. As we hold that this section is not involved in these cases and as we have found that there was no double taxation, the claimed questions of constitutionality disappear.
 

 We come now to the crux of these cases. Do the successions in question come from the father or the son?
 

 As the son never came into possession of any part of the corpus of the trust estate and died before his inchoate power of appointment ripened, no title can be traced
 
 through
 
 bim notwithstanding the father had provided for the succession of the son’s next of kin. Such provision was merely a designation of the class of beneficiaries which was to succeed, contingent upon the failure of prior persons and classes to become eligible. The son’s death was merely the happening of a contingency which caused appellants’ remainders to vest.
 

 As all of the property taxed in the cases now before us for review was the property still in the hands óf the father’s trustee and as no valid power of appointment could have been exercised within the time provided therefor, we are forced to the conclusion that the deter
 
 *454
 
 mination and assessment of inheritance taxes in the son’s estate based upon the value of the property in the hands of the father’s trustee was erroneous.
 

 It has been argued in substance that the fixing of the temporary rate by the Probate Court in the father’s case is
 
 res judicata
 
 of the entire question of inheritance taxes on the successions to this trust property. In other words, the state is now estopped. If such claim were recognized, then appellants would escape entirely the payment of inheritance taxes except as to the lesser recoverable amount which was determined and paid upon the assumption that the son would survive to take possession of the succession. This rate was the lowest provided by law. If we were to sanction this claim, it would be necessary to determine whether this court, under the peculiar facts and circumstances surrounding these appeals, should not affirm the judgments of the court below upon a proper interpretation of Section 11364, General Code, which was reenacted as a part of the act simplifying appellate procedure (116 Ohio Laws, 125, paragraph 2) and which provides, in part:
 

 “In case such reviewing court shall determine and certify that in its opinion substantial justice has been done to the party complaining as shown by the record, all alleged errors occurring at the trial shall by such reviewing court be deemed not prejudicial to the party complaining and shall be disregarded and such judgment or decree under review shall be affirmed * *
 

 This necessitates an inquiry in respect of the jurisdiction of the Probate Court in inheritance tax cases.
 

 Section 5340, General Code, gives to the Probate Court jurisdiction to hear and determine the questions arising under the inheritance tax law, and in order to discharge its functions under the inheritance tax law, the Probate Court must retain jurisdiction until the full amount of the tax upon the successions from any estate is ultimately determined. Temporary and ulti- •
 
 *455
 
 mate determinations at different times are clearly provided for, as shown by the sections of the statutes above cited.
 

 The record in the instant cases shows that only a temporary order was made in cause No. 5489 in the Probate Court of Geaug’a county in the case of Frederick C. Maxhimer (father), deceased. It is clearly gathered from the record as well as from the briefs and arguments of appellants that no further or ultimate determination of the inheritance taxes was made in the father’s estate. Under the record before us, the father’s estate is still open for such ultimate determination and assessment and not only the property in the hands of the trustee but the trustee itself is still liable for the taxes as finally determined in the father’s estate. The doctrine of
 
 functus officio
 
 cannot apply until after the inheritance tax law has been fully administered by the Probate Court.
 

 There is no legal way in which appellant, The Cleveland Trust Company, can definitely relieve itself from liability for the taxes ultimately to be found due from this estate other than by an application in the father’s estate for a determination of the ultimate taxes due. Attention has already been called to the fact that under Section 5336, General Code, where an estate does not vest at the death of the decedent by reason of which the actual value thereof cannot be ascertained at the time of such death, the taxes become due and payable when the persons then beneficially entitled thereto shall come into actual possession or enjoyment thereof. Section 5336 further provides:
 

 “Such taxes shall be and remain a lien upon the property passing until paid, and the successor and the executors or administrators of the general estate of the
 
 decedent,-and the trustees of such property shall be personally liable for all such tomes,
 
 with interest as.
 
 *456
 
 hereinafter provided, until they shall have been paid as hereinafter directed.” (Italics ours.)
 

 Section 5348-3, General Code, provides:
 

 “If, after the expiration of eighteen months from the accrual of any tax under this subdivision of this chapter, such tax shall remain unpaid, the áuditor of state shall notify the prosecuting attorney of the proper county, in writing, of such failure or neglect. If the determination of the tax has been delayed for more than one year after the accrual thereof such notice may be issued at any time after six months from the date of the order determining such tax. Such prosecuting attorney shall thereupon apply to the probate judge in the name of the county auditor on behalf of the state for a transcript of the order fixing the tax. Such transcript shall be filed in the office of the clerk of the Common Pleas Court of the county, and the same proceedings shall be had with respect thereto as are provided by Section 11659 of the General Code with respect to transcripts of judgments rendered by justices of the peace and mayors, except that the prosecuting attorney shall not be required to pay the costs thereof accruing at the time of filing the same. Thereupon the same effect shall be given to such transcript for all purposes as is given to such transcripts of judgments of justices of the peace or mayors filed in like manner.
 
 Provided, however, that nothing in this section shall be construed to affect the date of the lien of such taxes on the property passing, nor to divest such lien before the payment of such tax in the event of failure to sue out execution within the period prescribed by Section 11663 of the General Code.”
 
 (Italics ours.)
 

 Outside of the general statutes of limitation, if applicable, we find no limitation of time when the tax may be assessed or determined. As elsewhere mentioned, we do find not only that the tax remains a lien
 
 *457
 
 upon the property, hut that the trustee is also personally liable for the same until paid.
 

 The strong probabilities are that if we were to affirm these cases on the theory that substantial justice has been done it would end the matter. However, there would remain the. possibility of difficulty in removing the cloud from the title to the successions due to the lien created by Section 5336, General Code, as well as of clearing the record for the trust company in a satisfactory manner by showing a release from its continuing liability under the same statute.
 

 On the other hand, it is still possible to proceed in the correct way in the father’s estate.
 

 Therefore, the judgment of the Court of Appeals will be reversed in each case and final judgment rendered for each appellant, but the costs in each of the cases before us will be adjudged against the respective appellants.
 

 Judgments reversed and final judgments for appellants.
 

 Wbygandt, C. J., Williams, Matthias, Hart and Zimmerman, JJ., concur.
 

 Bettman, J., not participating.